Original

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

RECEIVED
MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

MAY 27 2016

| FILED | | |
|-------|------|---------|
| DOCKETED | DATE | INITIAL |

Paul Gordon Whitmore

Appellant,

9th Cir. Case No. **16-55264**

Originating Court Case No. **3:14-CV-02949-DMS-BGS**

vs.

JEFFERY DORT, ADA SD County; et al.

Appellee(s).

## APPELLANT'S INFORMAL BRIEF
(attach additional sheets as necessary)

1.  Jurisdiction

    a.  Timeliness of Appeal:

        (i)   Date of entry of judgment or order
              of originating court: **Feburary 4, 2016**

        (ii)  Date of service of any motion made after judgment (other than
              for fees and costs): **n/a**

        (iii) Date of entry of order deciding motion: **Feburary 4, 2016**

        (iv)  Date notice of appeal filed: **February 16, 2016**

        (v)   For prisoners, date you gave notice of appeal to prison
              authorities: **February 10, 2016**

9th Cir. Case No. ___16-55264___                              Page 2

2.   What are the facts of your case?
     (From the First Amended Complaint, SD form page 3)
     The source of all the evidence used at trial, to get search and arrest

warrents, were secondary from a computer in Denmark. This computer, along with

numerous documents and reports, was destroyed by the Danish Police three years

before trial. At no time did any of the Defendants make any effort to secure

the source of the evidence for examination by forensics, either prosecution

or defense.

     DORT was responsible for the entire prosecution team, and was very involved

with the investigation from before the Plaintiff's arrest.

     GUERRA was the lead investigator, responsible for maintaining all evidence

for trial and defense. Before the destruction, she was in Denmark on at least

two occasions and could easily have secured the computer and reports.

     PFINGST was the elected DA for San Diego County during the first year

of Plaintiff's arrest and the years before the arrest. He was intimantely

involved with the decisions in the case, a very high-profile case with lots

of press.

     DOES 1-5 were officers in the SD Sheriffs Office or SD Police Dept who

assisted or were assigned to GUERRA for the investigation. They too were responsible

for preserving the evidence for trial.

NOTE: See attached narrative Brief for further information.

9th Cir. Case No. ___16-55264___          Page 3

3.    What did you ask the originating court to do (for example, award damages, give injunctive relief, etc.)?

Compensatory Damages of $500,000**; Punitive Damages of $4,500,000**

4.    State the claim or claims you raised at the originating court.

The following Civil Right has been violated: Due Process under the 6th and 14th Amendments to the U.S. Constitution.

5.    What issues are you raising on appeal? What do you think the originating court did wrong?

(1)   The District Court erred in finding that the action was barred by Heck v Humphrey (1994) 512 U.S. 477, 129 L.Ed.2d 383, 114 S.Ct. 2364.

(2)   The District Court erred in finding that all Defendants were absolutely immune to suits seeking monetary damages.

NOTE: Please see attached narrative Brief for argument and citations.

9th Cir. Case No. **16-55264** _____                Page 4

6.    Did you present all issues listed in #5 to the originating court?
Yes.

    ___Yes___    If not, why not?
    Yes/No

7.    What law supports these issues on appeal?
      (You may, but need not, refer to cases and statutes.)

Most on point is <u>Trimble v City of Santa Rosa</u> (CA9 1995) 49 F.3d 49

<u>Mendez v Co. of Bernardino</u> (CA9 2008) 540 F.3d 1109; <u>Buckley</u>

<u>v Fitzsimmons</u> (1983) 509 U.S. 259, 125 L.Ed.2d 209, 113 S.Ct. 2606;

<u>Burns v Reed</u> (1990) 500 U.S. 478, 114 L.Ed.2d 547, 111 S.Ct. 1934.

Please see the attached Brief narrative for further argument

and citations.

9th Cir. Case No. __16-55264_____                    Page 5

8.   Do you have any other cases pending in this court?     No
     If so, give the name and docket number of each case.

9.   Have you filed any previous cases which have been decided by this court?
     If so, give the name and docket number of each case.

Whitmore v Cate, SD No.: 09-CV-001324-MMA-MDD

                    9th Circuit No.: 12-56751

                    U.S. Supreme Court:  13-8472

10.  For prisoners, did you exhaust all administrative remedies for each claim
     prior to filing your complaint in the district court?

To Plaintiff/Appellant's knowlege, there are no administrative remedies.

Paul Gordon Whitmore
Name
CSP-Corcoran
G-40654
P.O. Box 3471
Address
Corcoran, CA  93212-3471
5/24/2016
Date

Signature

## INDEX OF CITATIONS

Ashelman v Pope (CA9 1985) 793 F.3d 1072 9

BMW of No.Am. v Gore (1995) 517 U.S. 599, 134 L.Ed.2d 809 8
   116 S.Ct. 1589

Boag v MacDougall (1982) 454 U.S. 364, 70 L.Ed.2d 551 2
   102 S.Ct. 700

Brady v Md. (1963) 373 U.S. 83 4, 9

Buckley v Fitzsimmons (1983) 509 U.S. 259, 125 L.Ed.2d 209 10
   113 S.Ct. 2606

Burns v Reed (1990) 500 U.S. 478, 114 L.Ed.2d 547 10
   111 S.Ct. 1934

Carey v Piphus (1978) 435 U.S. 247, 98 S.Ct. 1042 9

Gantt v Co. of Los Angeles (CA9 2003) 71 F.3d 702 11

Gobels v Maricopa Co. (CA9 1989) 867 F.2d 1201 10, 11

Imbler v Pachtman (1975) 424 U.S. 409, 96 S.Ct. 984 9

Haines v Kerner (1972) 404 U.S. 519, 30 L.Ed.2d 652 2
   92 S.Ct. 594

Heck v Humphrey (1994) 512 U.S. 477, 129 L.Ed.2d 383 6
   114 S.Ct. 2364

Jackson v Barnes (CA9 2013) 749 F.3d 755 6

Levka v Chicago (CA7 1984) 748 F.2d 421 9

Mendez v Co. of Bernardino (CA9 2008) 540 F.3d 1109 8

Pearson v Callahan (2009) 555 U.S. 233, 129 S.Ct. 808 11

Poventud v City of NY (CA2 2014) 750 F.3d 121 6

Skinner v Switzer (2010) 131 S.Ct. 1289 6

Smith v Wade (1982) 561 U.S. 30, 75 L.Ed.2d 632 8
   103 S.Ct. 1625

Tennison v Co. of San Francisco (CA9 2008) 570 F.3d 1078 11

Trimble v City of Santa Rosa (CA9 1995) 49 F.3d 483 7

Wilkinson v Dotson (2005) 544 U.S. 74, 161 L.Ed.2d 253          6
                      125 S.Ct. 1242

Williams v Kaufman Co. (CA5 2003) 352 F.3d 994, 1015          9

Wolf v MacDonnell (1974) 418 U.S. 539, 41 L.Ed.2d 935          7
                     94 S.Ct. 2963

Paul Whitmore
G-40654
CSP-Corcoran
3C03 220L
P.O. Box 3471
Corcoran, CA  93212-3471

In Pro Se

IN THE UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

PAUL GORDON WHITMORE,

      Plaintiff/Appellant,

    v.

JEFF DORT, et al.,

      Defendants/Appellees.

16-55264

DC No.: 3:14-CV-02949-DMS-BGS

**BRIEF IN SUPPORT OF APPELLANT'S
OPENING ARGUMENTS**

    NOW COMES APPELLANT, PAUL WHITMORE, on appeal from a dismissal
without prejudice of a civil rights suit pursuant to subsection 1983.
Appellant/Plaintiff Whitmore is suing the San Diego County District
Attorneys and Sheriff's officers (and possibly San Diego City
Police via John Does) for thier deliberate indifference in allowing
the Danish Police and Danish National Police to destroy federal
codefendant Eggert Jensen's computer and data storage devices,
most of the police reports, interviews and related documents,
more than three years before trial, without any U.S.-based forensic
examination nor giving the defense team access to the source of
the evidence used at trial to convict him. (Eggert Jensen is
a Danish national) At the time of destruction, May 2002 Appellant/
Plaintiff Whitmore was voluntarily in custody, choosing not to
'bail-out', had not had a grand jury nor preliminary trial, nor

- 1 -

was Appellant felony-arrained until one year after the destruction
had occured.

Pro Se Appellant Whitmore is neither learned nor lettered
in the law, and therefore prays this court for the liberal reading
of pleadings and to not be held to the strict standards of form
and format expected of litigants represented by skilled and experienced
lawyers. (Boag v MacDougall (1982) 454 U.S. 364, 102 S.Ct. 700,
70 L.Ed.2d 551; Haines v Kerner (1972) 404 U.S. 519, 92 S.Ct. 594,
30 L.Ed.2d 652)

## BRIEF HISTORY OF THE CASE

In November of 2001, the Swedish organization 'Save the Children'
received an anonymous tip that 'new' child pornography had been
uploaded to an Internet Newsgroup. The director of the organization,
Per-Erik Angstrom, found the child pornography referrenced in
the tip, found that it was different than any previously posted,
and also noticed that the perpatrator could be seen clearly,
wearing his workshirt with the company name and his name embroidered
on the pocket. After a couple brief phonecalls, the Danish National
Police arrested Eggert Jensen of Tarm, Denmark, later the same
day the tip came in.

Evidence collected at the Jensen apartment led the Danish
police to contact U.S. Customs (now ICE) in Germany, in December
of 2001. Customs then contacted U.S. Sheriff's in the California
cities of Clovis and San Diego. Named Defendant, San Diego Sheriff
Detective Stephanie GUERRA, received an e-mail from them, encrypted,
with several allegedly pornographic photographs that Guerra then
used to obtain search and arrest warrents. Finally in January 27,
2002, Guerra and other officers from several agencies came to

- 2 -

arrest Appellant Whitmore. This became a world-infamous case,
resulting in over 200 inditements, in over 20 states and over
10 countries, the first of the big, Internet 'kiddy-porn' conspiracies,
dubbed 'Operation Hamlet.'

Defense counsel made numerous motions for discovery of the
source information, how interviews were conducted, how police
in Denmark connected A to B, reports and notes on process and
procedures used, all to no avail. Numerous requests for sanctions
against the prosecution were made and denied. As Appellant Whitmore
was prosecuted both in federal and state jurisdictions, he was
transported between San Diego (state) and Clovis (federal) greatly
delaying both proceedings. The preliminary trial did not occur
until September of 2003, and resulted in Appellant's felony arrainment.

Trial came in October 2005. When Lars Underbjerg of the Danish
National Police came to testify in an EC 403 evidentiary hearing,
the defense team learned that all the evidence that had been
requested and NOT discovered to the defense team had, in fact,
been destroyed along with the computer that was the source of
all the alleged child pornography, back in May 2002.

No one had thought to retain this evidence for the defense
team, or even the prosecution team who then required the evidentiary
hearing to admit the evidence with little chain of evidence.
No U.S. officers had done forensic work on the Danish computer either.
Detective Guerra testified that she had 'numerous' communications
with Underbjerg in Denmark and had even flow out to visit him
prior to the destruction (in March 2002). Guerra was a senior
officer with the Sheriff's Office, and had more than ten years
experience handling evidence with drug enforcment. Guerra was
now with an interdepartment, national task force, the Internet

Crimes Against Children (ICAC) and was the lead investigator
since receiving the e-mail from Underbjerg in December 2001.

Appellant Whitmore was convicted after five weeks of trial
of fifty felony counts and one misdemeanor. The jury deliberated
less than five hours. In March 2006, Appellant was sentenced
to 465 years and 8 months - to - life.

Direct appeal was denied (conviction affirmed) by the state
court of appeals and review denied by the state supreme court.
In August 2009, Appellant filed pro se in the U.S. District Court
for a writ of habeas corpus pursuant to subsection 2254, repeating
the same issues from the state appeal. This was denied, Certificate
of Appealability was denied by the 9th Circuit, and in January
2014 the Supreme Court of the US denied certiorari.

On direct appeal, the issue of evidentiary manipulations
via destruction of the evidence, failure to establish authentication,
failure to establish chain of evidence, and related evidentiary
problems were all raised. As appointed counsel for appeal, Patrick
Foud, esq, stated in the direct appeal, the prosecution committed
a 'preemptive Brady-violation' by allowing the Danish to destroy
all the source evidence, using officers simply relating what
they remembered as evidence instead of having reports and interviews
that the defense could review. The prosecution made this a piviotal
and essential element of the prosecution. (Brady v Md. (1963)
373 U.S. 83) Had this Brady not occured, Appellant argued, then
the case would have collapsed for lack of foundation and proof
of criminal intent and activity.

The courts reviewing the case, however, disagreed with Appellant
Whitmore's contentions. The state Court of Appeals and the federal

- 4 -

District Court, in reasoned decisions, found that, if error had
occured, it was harmless error - given the 'mountain of evidence '
adduced at trial. Neither court ruled on the merit, only that
any error was harmless. This circular logic was supported by
the Court of Appeals and the U.S. Supreme Court. No court has
ever ruled on merit of the evidentiary errors alleged as, even
if there were errors, they were all harmless.

On December 12, 2014, Appellant filed a civil rights complaint
pursuant to subsection 1983 against the Defendants, alleging that
the Due Process clauses of the 6th and 14th Amendments were vialated
by the Defnedants making no effort to preserve the source materials
of all the evidence used at trial. This was dismissed with,,leave
to ammend. Plaintiff/Appellant filed a First Amended which was
dismissed without prejudice but without leave to ammend for (1)
failing to state a claim under which relief could be granted
and (2) seeking monetary damages against immune defendants. Appellant
filed notice of appeal on February 16, 2016.

## ARGUMENT

Appellant wishes to note that, when the District Court dismissed,
there was an error in the Order. On page 2, "Plaintiff has now
filed a First Amended Complaint naming the same defendants."
This is incorrect, Appellant on filing the First Amended dropped
Bonnie Dumanis as a defendant. Appellant is certain this was
an oversight by the court, but it should be corrected if this
case is reinstated.

////

- 5 -

## I. THE FIRST AMENDED COMPLAINT IS NOT HECK BARRED

(Heck v Humphrey (1994) 512 U.S. 477, 129 L.Ed.2d 383, 114 S.Ct. 2364)

### a. A Brady Allegation Does Not Necessarily Predicate a Heck Bar

On page 4 of the Order (Exhibit A) the District Court states, "Plaintiff was informed that a claim alleging a Brady falls under the Heck bar." This is incorrect. In Poventud v City of NY (CA2 2014) 750 F.3d 121, the Court of Appelas found that Poventud's Brady claim did not necessarily imply the invalidity of the conviction. Poventud had received an overturn and took a plea bargain. This plea bargain insulated the criminal conviction from the civil action. Similarly in Jackson v Barnes (CA9 2013) 749 F.3d 755, this Court found that retrial, post-overturn, also insulates the criminal conviction from the civil action.

Even in cases involving Brady, the court must look past the conviction to see if the plaintiff were successful, would this necessarily implicate the validity of the conviction.

### b. Heck Bar Applies Only to Conflict Between Criminal and Civil Actions

When contesting the validity of a conviction, the only avenue available to the convicted person is habeas corpus. "We think the hoary principles that tort civil actions are not an appropriate vehicle to challenge the validity of outstanding criminal judgments..." should remain the law of the land. (Heck, supra, @ 2372) In both Wilkinson v Dotson (2005) 544 U.S. 74, 161 L.Ed.2d 253, 125 S.Ct. 1242, and Skinner v Switzer (2010) 131 S.Ct. 1289, the Supreme Court both supported the Heck ruling, but also clarified what the Heck bar isn't. If favorable judgment under 1983 does not necessarily imply the invalidity of the underlying conviction or result in

speedier release, then the 1983 action is NOT barred.

The High Court in Heck, supra, specifically allowed prisoners
to bring 1983 claims for using wrong procedures, but not for
getting wrong results. (Heck @ 482-83) In Wolf v MacDonnell (1974)
418 U.S. 539, 41 L.Ed.2d 935, 94 S.Ct. 2963, the court found
that section 1983 claim raised by Wolf, "... did not call into
question the lawfulness of plaintiff's continuing confinement."
Instead, Wold had challenged the process used to determine good-
time credits not the awarding of the credits themselves. Damages
were awarded for a free-standing civil rights issue, Due Process
under the 14th Amendment,and the case proceeded.

This Court, in Trimble v City of Santa Rosa (CA9 1995) 49
F.3d 583, stated that a finding of 'harmless error' could act
to insulate the criminal conviction from civil action since, if
a finding that the error occured, it would still be harmless
to the criminal conviction. "In Heck, the Supreme Court concluded
that because of doctrines like independent source, inevitable
discovery, and harmless error, a successful section 1983 action
for an unreasonable search 'would not necessarily imply that
plaintiff's conviction was invalid.'" (@585, Citing Heck, supra,
@ 2372-3, n.7, underline added)

In the instant case, destruction of the source of the evidence,
computer and drives, reports, etc, eliminated the source of the
evidence both inculpable and exculpable, if any. HOWEVER, all
courts reviewing this case for appeal and habeas corpus, found
that if any error occured, then this error was harmless. Therefore,
even if district court finds for the Appellant and awards damages,
the underlying conviction is not implicated.and the sentence is

- 7 -

not invalidated.

Appellant is challenging the process of evidence collection
and management, not the outcome of such evidence. Appellant
does not allege that his conviction is invalid, only that the
evidence collection process used violated his Due Process rights.
Since this issues has already been found 'harmless' to the criminal
conviction, there is no conflict.

**c. Harmless Error Does Not Preclude Damages in a 1983 Action**

In BMW of No.Am. v Gore (1995) 517 U.S. 559, 134 L.Ed.2d 809,
116 S.Ct. 1589, the Supreme Court held that damages can be awarded
to punish and deter further unlawful conduct. They further recognized
that, "punitive damages [may be used] to remove the profit of
the illegal activity and be in excess of the profit so that the
defendants will recognize the loss." (@ 591) In Mendez v Co.
of Bernardino (CA9 2008) 540 F.3d 1109, this Court found that
constitutional torts (like the instant case) are far more likely
to have no compensatory damages, however, "the Court's [SCOTUS]
clear guidance that punitive damages should remain available
even in the absence of a compensable injury..." (@ 1122)

In Smith v Wade ({1982) 461 U.S. 30, 75 L.Ed.2d 632, 103
S.Ct. 1625, the High Court found that, "compensatory damages
... fulfill the goal of compensation, ... leaving only deterrence
to be served by awards of punitive damage." "A jury may be permitted
to asses punitive damages in an action under section 1983 when
the defendants' conduct is shown to be motivated by evil intent
or motive, if it involves reckless or callous indefference to
the federally protected rights of others." (underline added)

- 8 -

Several courts have held that emotional injury is compensable for a constitutional civil rights violation, as long as the case is not under the Prison Litigation Reform Act (PLRA). (See for example, <u>Levka v Chicago</u> (CA7 1984) 748 F.2d 421, emotional damages for a strip search.) In <u>Carey v Piphus</u> (1978) 435 U.S. 247, 98 S.Ct. 1042, the Court held that where there is no injury, there can be no compensatory damages, however emotional injury can be compensated (except under PLRA, of course). (Also see <u>Williams v Kaufman Co.</u> (CA5 2003) 352 F.3d 994, 1015)

The instant case is not a PLRA case as it does not involve the nature nor conditions of confinement. As such, Appellant can argue the worsening of his depression as the result of the civil rights violation and use this as an actual injury for compensatory damages. While Appellant Whitmore does plan to use any funds that proceed from his suit to attack his conviction on collateral habeus corpus, this is not such an attack.

## II.  NAMED DEFENDANTS ARE NOT ENTITLED TO IMMUNITY

### a.  Prosecutors are Not Entitled to Immunity in this Action

The initial case establishing immunity for prosecutors from <u>Brady</u> actions was <u>Imbler v Pachtman</u> (1975) 424 U.S. 409, 96 S.Ct. 984. However, this was for actions of the prosecutor during trial, as an officer of the court, and was immune due to the quasi-judicial nature of the prosecutor's actions. "... imunity extends to a prosecutor who acts with in his authority and in a quasi-judicial capacity." (<u>Ashelman v Pope</u> (CA9 1986) 793 F.3d 1072 @ 1076) "While a prosecutor's preperation for the initiation of the criminal process may require obtaining, reviewing, and evaluating evidence,

at some point the prosecutor stops functioning as an officer
of the court and loses the protection of absolute immunity."
(Gobel v Maricopa Co. (CA9 1989) 867 F.2d 1201 @ 1076) "Numerous
courts have held that prosecutors are not entitled to absolute
immunity when they take part in the preliminary gathering of
evidence that may ripen into a potential prosecution." (Ibid,
@ 1204)

In Buckley v Fitzsimmons (1983) 509 U.S. 259, 125 L.Ed.2d
209, 113 S.Ct. 2606, the Supreme Court established the "functional
approach" (@ 269) to analyizing whether the prosecutor is immune
or not to prosecution. Actions that are investigative or administrative
are not immune. In Burns v Reed (1990) 500 U.S. 478, 114 L.Ed.2d
547, 111 S.Ct. 1934, the High Court definitively stated that
prosecutors are not immune when they give advice to the police
(or a Sheriff's detective) during the investigation.

Should Appellant be able to discover evidence that either
or both Dort or Phingst advised the Sheriff's officers about
evidence collection involving Denmark, then this advice or lack
of advice would be actionab le and not immune. This would be
both 'investigative' as it occurs outside the pervue of the prosecution,
and also 'administrative' as it is advice to an investigatory
agency. The High Court has already ruled that such conduct is
not immune.

## b. Investigators are Not Immune to Brady Suits

District Court cited Gobels, supra, @ n.5, and quoted, "...
investagators, employed by a prosecutor and performing investigative
work are entitled to the same degree of immunity as prosecutors."

The court then used this to explain why named Defendants were immune to prosecution. This was in error. The 9th Circuit clearly state that investigators 'employed by the prosecutor' have immunity. Gobels hinged on the fact that the court could not tell who the investigator worked for, so assumed it was the prosecutor. However in the instant case , the investigator worked for the Sheriff's office and the Sheriff has no absolute immunity.

In Tennison v Co. of San Francisco (CA9 2008) 570 F.3d 1078, this Court held that investigators are not entitled to immunity from Brady suits under section 1983. "Suppression of evidence violates Due Process when evidence is material to guilt or punishment, irrespective of good or bad faith." (Tennison, supra) This Court also found that there is no immunity of prosecutors or investigators for Brady or Giglio violations that occur in the investigatory phase of the case. (Gantt v CO. of Los Angeles (CA9 2003) 71 F.3d 702) The Supreme Court found that the qualified immunity of investigators does not protect them when they allow violations of constitutional law. (Pearson v Callahan (2009) 555 U.S. 233, 129 S.Ct. 808)

In the instant case, named Defendants GUERRA and DOES 1-5 are either employed by the Sheriff's office (as is GUERRA) or the San Diego Police (possibly DOES) and NONE are employed by the prosecutor's office. As such, there is no conferred immunity. Brady has been the law of the land for over fifty years and to think that none of these seasoned investigators and prosecutors in a high-profile case thought to preserve the evidence is unthinkable. This is the definition of deliberate indifference. There can be bo immunity for the investagators and , if Appellant can show

- 11 -

that DORT or PHINGST were involved in the investigation, or that
they advised the investigator(s) about evidence collection in
Denmark, then they are not immune either.

## CONCLUSION AND PRAYER TO THE COURT

In this case, ther is no <u>Heck</u> bar as the 'harmless error'
already adjudicated insulates the criminal conviction from the
civil action. The prosecutor(s) were acting as investigators
and have no absolute immunity, and if this cannot be shown, then
advice given regarding the evidence collection in Denmark could
also breach their immunity. Sheriff's officers and police officers
HAVE no immunity to constitutional violation like <u>Brady</u>.

Appellant prays this court reinstate this action, and order
the district court to order service on the Defendants.

5/24/2016                      Respectfully Submitted,

I declare under penalty of perjury under the laws of the United States
that the foregoing is both true and correct.

5/24/2016

# EXHIBIT
# A

1
2
3
4
5
6
7

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

8
9
10

| | |
|---|---|
| PAUL GORDON WHITMORE,<br>CDCR #G-40654,<br><br>                              Plaintiff,<br><br>          vs.<br><br>JEFFREY DORT, et al.,<br><br>                              Defendants. | Civil No.     14cv2949-DMS (BGS)<br><br>**ORDER SUA SPONTE<br>DISMISSING CIVIL ACTION FOR<br>FAILING TO STATE A CLAIM<br>AND FOR SEEKING MONETARY<br>DAMAGES AGAINST IMMUNE<br>DEFENDANTS PURSUANT TO 28<br>U.S.C. §§ 1915(e)(2) & 1915A(b)** |

11
12
13
14
15
16
17

18    On December 12, 2014, Paul Gordon Whitmore ("Plaintiff"), a state prisoner
19  incarcerated at Corcoran State Prison located in Corcoran, California, filed a civil rights
20  complaint ("Compl.") pursuant to 42 U.S.C. § 1983, accompanied by a Motion to
21  Proceed In Forma Pauperis ("IFP") pursuant to 28 U.S.C. § 1915(a). (ECF Nos. 1-2.)
22  The Complaint alleged violations of Plaintiff's due process rights arising from the
23  destruction of evidence allegedly relevant to his defense in his San Diego County
24  Superior Court criminal trial, resulting in his inability to secure a favorable plea bargain
25  or a shorter prison sentence. (Compl. at 3-4, 19-21.) The Complaint sought monetary
26  damages from the prosecuting attorney, the lead investigating detective, two elected San
27  Diego County District Attorneys, and Does 1-5, who were identified as the individuals
28  responsible for obtaining or preserving the evidence. (Id. at 2.)

1   On April 16, 2015, the Court denied the IFP motion without prejudice due to

2   Plaintiff's failure to provide the Court with a copy of his inmate trust account statement

3   as required by 28 U.S.C. § 1915(b)(1). (ECF No. 3.) Plaintiff thereafter renewed his IFP

4   motion, accompanied by the required trust account statement. (ECF Nos. 4, 6-7.)

5   On October 7, 2015, the Court granted Plaintiff's renewed IFP motion, but

6   dismissed the Complaint without prejudice because Plaintiff sought monetary damages

7   from defendants who are immune from suit for monetary damages, and because

8   Plaintiff's claims necessarily implied the invalidity of his criminal conviction and were

9   therefore barred by the doctrine announced in Heck v. Humphrey, 512 U.S. 477, 486-87

10  (1994). (ECF No. 8.) Plaintiff was granted leave to file a First Amended Complaint

11  which cured these defects of pleading. (Id.)

12  Plaintiff has now filed a First Amended Complaint naming the same Defendants.

13  (ECF No. 9.) For the following reasons, Plaintiff has not cured the defects of pleading

14  identified in the Court's previous Order of dismissal, and the First Amended Complaint

15  is therefore subject to dismissal. Additionally, because it is now clear that Plaintiff is not

16  able to cure the defects of pleading, the dismissal is without further leave to amend.

17  **I.     SUA SPONTE SCREENING PER 28 U.S.C. § 1915(e)(2) and § 1915A**

18      **A.     Screening Standard**

19  The Court must review complaints filed by all persons, like Plaintiff, who are

20  proceeding IFP and who are "incarcerated or detained in any facility [and] accused of,

21  sentenced for, or adjudicated delinquent for, violations of criminal law or the terms or

22  conditions of parole, probation, pretrial release, or diversionary program," "as soon as

23  practicable after docketing." See 28 U.S.C. §§ 1915(e)(2) and 1915A(b). Pursuant to

24  these statutes, the Court must sua sponte dismiss complaints, or any portions thereof,

25  which are frivolous, malicious, fail to state a claim, or which seek damages from

26  defendants who are immune. See 28 U.S.C. §§ 1915(e)(2)(B) and 1915A; Lopez v.

27  Smith, 203 F.3d 1122, 1126-27 (9th Cir. 2000) (en banc) (§ 1915(e)(2)); Rhodes v.

28  Robinson, 621 F.3d 1002, 1004 (9th Cir. 2010) (discussing 28 U.S.C. § 1915A(b)).

14cv2949

1    All complaints must contain "a short and plain statement of the claim showing

2 that the pleader is entitled to relief." FED.R.CIV.P. 8(a)(2). Detailed factual allegations

3 are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported

4 by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678

5 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). "Determining

6 whether a complaint states a plausible claim for relief [is] . . . a context-specific task that

7 requires the reviewing court to draw on its judicial experience and common sense." Id.

8 at 679. The "mere possibility of misconduct" does not meet this standard. Id.

9    "When there are well-pleaded factual allegations, a court should assume their

10 veracity, and then determine whether they plausibly give rise to an entitlement to relief."

11 Iqbal, 556 U.S. at 679; see also Resnick v. Hayes, 213 F.3d 443, 447 (9th Cir. 2000)

12 ("[W]hen determining whether a complaint states a claim, a court must accept as true all

13 allegations of material fact and must construe those facts in the light most favorable to

14 the plaintiff."); Barren v. Harrington, 152 F.3d 1193, 1194 (9th Cir. 1998) (noting that

15 § 1915(e)(2) "parallels the language of Federal Rule of Civil Procedure 12(b)(6)").

16    However, while the court has an obligation "where the petitioner is pro se,

17 particularly in civil rights cases, to construe the pleadings liberally and to afford the

18 petitioner the benefit of any doubt," Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010),

19 quoting Bretz v. Kelman, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985), it may not, in so

20 doing, "supply essential elements of claims that were not initially pled." Ivey v. Board

21 of Regents of the University of Alaska, 673 F.2d 266, 268 (9th Cir. 1982).

22    **B.    42 U.S.C. § 1983**

23    "Section 1983 creates a private right of action against individuals who, acting

24 under color of state law, violate federal constitutional or statutory rights." Devereaux

25 v. Abbey, 263 F.3d 1070, 1074 (9th Cir. 2001). Section 1983 "is not itself a source of

26 substantive rights, but merely provides a method for vindicating federal rights elsewhere

27 conferred." Graham v. Connor, 490 U.S. 386, 393–94 (1989) (internal quotation marks

28 omitted). "To establish § 1983 liability, a plaintiff must show both (1) deprivation of a

-3-

14cv2949

1   right secured by the Constitution and laws of the United States, and (2) that the

2   deprivation was committed by a person acting under color of state law." <u>Tsao v. Desert</u>

3   <u>Palace, Inc.</u>, 698 F.3d 1128, 1138 (9th Cir. 2012).

4       **C.**    <u>**Heck** Bar</u>

5         In his First Amended Complaint, as in his Original Complaint, Plaintiff seeks

6   monetary damages for alleged destruction of evidence he contends was relevant to his

7   defense in his underlying state criminal proceedings. (FAC at 3, 9-12; Compl. at 19-21.)

8   Plaintiff is once again seeking damages in the amount of $500,000, and punitive

9   damages in the amount of $4,500,000. (FAC at 7; Compl. at 7.)

10         "In any § 1983 action, the first question is whether § 1983 is the appropriate

11   avenue to remedy the alleged wrong." <u>Haygood v. Younger</u>, 769 F.2d 1350, 1353 (9th

12   Cir. 1985) (en banc). A prisoner in state custody simply may not use a § 1983 civil

13   rights action to challenge the "fact or duration of his confinement." <u>Preiser v. Rodriguez</u>,

14   411 U.S. 475, 489 (1973). He must seek federal habeas corpus relief instead. <u>Wilkinson</u>

15   <u>v. Dotson</u>, 544 U.S. 74, 78 (2005), quoting <u>Preiser</u>, 411 U.S. at 489. Thus, a § 1983

16   action "is barred (absent prior invalidation)–no matter the relief sought (damages or

17   equitable relief), no matter the target of his suit (state conduct leading to conviction or

18   internal prison proceedings)–if success in that action would necessarily demonstrate the

19   invalidity of confinement or its duration." <u>Wilkinson</u>, 544 U.S. at 82.

20         In this case, Plaintiff's claims "necessarily imply the invalidity" of his criminal

21   conviction because they are predicated on allegations that the outcome of his trial would

22   have been different, or his sentence would have been lower, if he had been given access

23   to the evidence which the defendants allegedly destroyed. <u>Heck</u>, 512 U.S. at 487. In this

24   Court's previous Order of dismissal, Plaintiff was informed that a claim alleging a

25   violation of <u>Brady v. Maryland</u>, 373 U.S. 83, 87 (1963) (holding that "the suppression

26   by the prosecution of evidence favorable to an accused upon request violates due process

27   where the evidence is material either to guilt or to punishment."), falls under the <u>Heck</u>

28   bar. (ECF No. 8 at 5-6.) Plaintiff now states that he is not raising a <u>Brady</u> claim because

1    he has no way of knowing whether the destroyed evidence was relevant or material to

2    his guilt or innocence, and he is not alleging bad faith on the part of the government

3    actors. (FAC at 10-11.) A Brady claim does not require a showing of good or bad faith

4    in failing to meet the obligation to turn over to the defense material evidence. See Brady,

5    373 U.S. at 87 ("We now hold that the suppression by the prosecution of evidence

6    favorable to an accused upon request violates due process where the evidence is material

7    either to guilt or punishment, irrespective of the good faith or bad faith of the

8    prosecution."); see also Arizona v. Youngblood, 488 U.S. 51, 57-58 (1988) (holding that

9    "unless a criminal defendant can show bad faith on the part of the police, failure to

10   preserve evidence does not constitute a denial of due process.")

11          Plaintiff states that he is not challenging his conviction in this action. He contends

12   that "the courts have already ruled that any such error [in destroying the evidence] was

13   harmless, since Plaintiff was convicted by a 'mountain of evidence,'" and he contends

14   that if he had a viable Brady or Youngblood claim he would have raised it in his direct

15   appeal or collateral challenges to his conviction. (FAC at 11-14.) Nevertheless, the only

16   damage Plaintiff has identified is the possibility that his sentence could have been

17   reduced, or he could have been provided with a more favorable plea bargain, if the

18   evidence had not been destroyed and had been available to his defense. Thus, he is

19   alleging that the injury he suffered was a conviction or a longer sentence, exactly the

20   type of injury Heck specifically held was not compensable under § 1983 until after the

21   conviction has been invalidated. See Heck, 512 U.S. at 487 n.7 ("In order to recover

22   compensatory damages, however, the § 1983 plaintiff must prove not only that the search

23   was unlawful, but that it caused him actual, compensable injury which, we hold today

24   does not encompass the 'injury' of being convicted and imprisoned (until his conviction

25   has been overturned).") (internal citation omitted).

26          In creating a favorable termination rule in Heck, the Supreme Court relied on "the

27   hoary principle that civil tort actions are not appropriate vehicles for challenging the

28   validity of outstanding criminal judgments." Heck, 512 U.S. at 486; see also id. at 479,

14cv2949

1    490 (holding a claim for monetary damages alleging that prosecutors and an investigator
2    knowingly destroyed evidence which was exculpatory in nature and could have proved
3    petitioner's innocence cannot be maintained under § 1983). Therefore, as Plaintiff was
4    informed in this Court's previous Order of dismissal, in order to satisfy Heck's
5    "favorable termination" rule, he must allege facts which show that the conviction which
6    forms the basis of his claims has already been: (1) "reversed on direct appeal";
7    (2) "expunged by executive order"; (3) "declared invalid by a state tribunal authorized
8    to make such a determination"; or (4) "called into question by a federal court's issuance
9    of a writ of habeas corpus [pursuant to] 28 U.S.C. § 2254." Heck, 512 U.S. at 487.

10       Plaintiff has once again failed to allege facts sufficient to satisfy Heck. In fact,
11   Plaintiff has unsuccessfully attempted to invalidate his conviction by filing a petition for
12   a writ of habeas corpus pursuant to 28 U.S.C. § 2254 in this Court. (See Pet. filed
13   5/26/09 [ECF No. 1] in So.Dist.Ca. Civil Case No. 09cv1324-MMA (MDD).) This
14   Court denied that Petition on the merits, and Plaintiff unsuccessfully appealed the
15   judgment to the Ninth Circuit Court of Appeals. (Id., ECF Nos. 70, 74.)

16       Because Plaintiff's § 1983 claims challenge and necessarily imply the invalidity
17   of his current term of confinement, they must be dismissed without prejudice. See
18   Trimble v. City of Santa Rosa, 49 F.3d 583, 585 (9th Cir. 1995) (finding that an action
19   barred by Heck has not yet accrued and thus, must be dismissed without prejudice so that
20   the plaintiff may reassert his § 1983 claims if he succeeds in invalidating the underlying
21   conviction or sentence). Because it is clear Plaintiff cannot at this time cure this
22   pleading defect, the dismissal is without further leave to amend in this action, but
23   without prejudice to Plaintiff to present his claims in a new civil rights action if and
24   when he succeeds in having his conviction invalidated.

25       **D.    Prosecutorial Immunity**

26       In addition, even assuming Plaintiff could somehow overcome the Heck bar, he
27   has once again named Defendants who are immune from suit. As the Court informed
28   Plaintiff in the previous Order of dismissal, the Court must dismiss Plaintiff's claims for

1   money damages against criminal prosecutors because they are absolutely immune from
2   civil damages suits premised upon acts committed within the scope of their official
3   duties which are "intimately associated with the judicial phase of the criminal process."
4   Imbler v. Pachtman, 424 U.S. 409, 430 (1976); see also Buckley v. Fitzsimmons, 509
5   U.S. 259, 272-73 (1993); Burns v. Reed, 500 U.S. 478, 487-93 (1991). A prosecutor is
6   immune even when the prosecutor's malicious or dishonest action deprived defendant
7   of his or her liberty. Ashelman v. Pope, 793 F.2d 1072, 1075 (9th Cir. 1986).

8         Plaintiff argues that prosecutorial immunity is not appropriate because the
9   destruction of the evidence occurred prior to his arrest and indictment, while his case was
10  still in the investigatory stage, and not yet at the prosecutorial stage. (FAC at 16.)
11  However, "[i]nvestigators, employed by a prosecutor and performing investigative work
12  in connection with a criminal prosecution, are entitled to the same degree of immunity
13  as prosecutors. Gobel v. Maricopa County, 867 F.2d 1201, 1203 n.5 (9th Cir. 1989),
14  abrogated on other grounds by Merritt v. County of Los Angeles, 875 F.2d 765 (9th Cir.
15  1989). Thus, Plaintiff's claims against the prosecutors and their investigators, including
16  the Doe defendant investigators, are once again dismissed pursuant to 28 U.S.C.
17  § 1915(e)(2)(B)(iii) & § 1915A for seeking monetary relief against defendants who are
18  immune from such relief. Because it is clear Plaintiff cannot cure this defect of pleading,
19  the dismissal is without leave to amend.

20  **II.   CONCLUSION AND ORDER**

21        Good cause appearing, **IT IS HEREBY ORDERED** that Plaintiff's First
22  Amended Complaint is **DISMISSED** without prejudice for failing to state a claim upon
23  which relief may be granted and for seeking monetary damages against immune
24  defendants pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and § 1915A(b)(1). The dismissal
25  is without further leave to amend.

26        **IT IS SO ORDERED**.
27  DATED: February 4, 2016

        **HON. DANA M. SABRAW**
        **United States District Judge**

14cv2949

# EXHIBIT

# B

1  Paul Whitmore
2  G-40654
3  CSP-Corcoran
4  P.O. BOX 3471
5  Corcoran, CA  93212-3471
6
7  In Pro Se
8
9              IN THE UNITED STATES DISTRICT COURT
10            FOR THE SOUTHERN DISTRICT OF CALIFORNIA
11
12  PAUL GORDON WHITMORE,          )   Case No:
13         Plaintiff,              )   Previous:3:14-CV-0249-DMS-BGS
14     v.,                         )
15  JEFFERY DORT, et al.,          )   **APPROPRIATENESS OF THIS ACTION**
16         Defendants.             )
17  _____  )
18
19      **NOW COMES PLAINTIFF**, a pro se litigant, in this instant action,
20  a civil rights suit under 42 U.S.C. § 1983. Plaintiff prays this
21  court for a liberal interpretation of these pleadings, as well
22  as to not be held to the high standards of form and format usually
23  expected of litigants with skilled and experienced lawyers.
24  (Boaz v MacDougall (1982) 454 U.S. 364, 70 LEd2d 551, 102 SCt 700;
25  Haines v Kerner (1972) 404 U.S. 519, 30 LEd2d 652, 92 SCt 594)
26  ////
27
28                          - 1 -

## SALIENT HISTORY OF THE CRIMINAL ACTION

In Nov 2001, the Swedish group 'Save the Children' received an anonymous tip that hard-core, bondage child pornography had been posted to a newsgroup on the Internet. A senior official, Per-Erik Angstrom, downloaded the images, found they were not in their database of 'know' porn, and contacted the police. In the images, the offender was wearing a work shirt with his company name and his name visible in some of the photos. Investigation showed this to be Eggert Jensen of Tarm, Denmark, who was arrested later that same day. During his interrogation, he admitted to molesting his step-daughter, Jeanette, producing child porn including hard-core bondage, torture, and beating of her, and trading and selling these images of his perverse actions to more than 80 people over the Internet. Jensen's wife, Bente, confessed to similar actions with her daughter. Jensen was sentenced to two-years, with half-time for good behavior, even though he was convicted of a similar number and type of charges to Plaintiff, who received 467-years to life.

Jensen cooperated with officials very actively, and in January the first two Americans were arrested, Lloyd Emmerson of Clovis and the Plaintiff.

Guerra travelled to Denmark at least two times in the Spring of 2002 and had numerous communications (phone calls, e-mails, peer-to-peer chats) with Danish officer Underbjerg. Under Underbjerg authority, the computer from the Danish investigation, along with almost all the reports and interviews, were destroyed in May of 2002.

- 2 -

## PROPRIETY OF THE INSTANT ACTION

On direct appeal and federal habeas (28 USC § 2254), now-Plaintiff Whitmore raised several grounds for relief, including issues in the foundation and chain of custody of the Danish evidence. All these were denied as 'harmless' error if any error at all. "Even if Petitioner could demonstrate authentication issues arising from the fact that his activities were first discovered in a foriegn country, or were introduced from a 'cloned' hard drive rather than the original, an expert witness testified that the videos introduced at trial were shot live and were not composite, that is, they accurately depict the interaction between the individual seen in the videos." (Whitmore v Cate, Report and Recommendations, pps 31-32) "The court also finds that any possible constitutional violation was harmless." "... this court has concluded that, even assuming errors occured, they were harmless." (Id. pps 60-61)

## NEITHER A BRADY NOR YOUNGBLOOD CLAIM CAN BE RAISED

(Brady v Md. (1963) 373 U.S. 83; Arizona v Youngblood (1988) 488 U.S. 51)

For a petitioner to raise a Brady claim sufficently, he must show that: (1) The prosecution team had the evidence, knew what it was, and failed to disclose it; (2) The evidence not presented at trial would have had a significant effect on the jury's decision i.e. that it's suppression was prejudicial. In the instant case, there is NO evidence to review to decide if the prosecution team should have known that it was exculpatory or impeachment material and should have been discovered to the defense. Also, since the

- 3 -

1  evidence in question, the computer AND it's cloned drive AND
2  the reports, is destroyed, there is no way to decide if the suppressi
3  of the evidence was in any way prejudicial. In fact, the courts
4  have already ruled that any such error was harmless, since the
5  Plaintiff was convicted by a 'mountain of evidence' not just
6  the computer images.

7      Plaintiff has raised no such <u>Brady</u> claim, nor did his appointed
8  counsel on appeal suggest such, because a <u>Brady</u> action does not
9  lie in this case.

10

11     Similarly, a <u>Youngblood</u> claim cannot be raised either. To
12  successfully prosecute a <u>Youngblood</u> claim on appeal or habeas,
13  the petitioner must show: (1) Police acted in 'bad faith', which
14  is a higher standard than deliberate indifference or gross negligenc
15  standards; and, (2) The evidence was destroyed by the people
16  charged with protecting it. Justice Stevens, in his concurring
17  opinion in <u>Youngblood</u>, further stated that since the police had
18  as much interest in preserving the (DNA blood) evidence  as did
19  the defense, there is no showing of 'bad faith.'

20     Here too, in the instant case, there is no direct showing
21  of 'bad faith.' The evidence destroyed was the source of all
22  the inculpable evidence as well, so the police had as much interest
23  as the defense in maintaining it. Because the Danish police acted
24  precipitously, and the US officers failed to act at all, the
25  destroyed evidence cause the prosecution to spend several days
26  and present expert witnesses to 'get arround' the foundational
27  and chain of custody issues their negligence raised.

28                          - 4 -

1  In a recent case from the Ninth Circuit, US v Zuniga-Garcia
2  (CA9 2012) 472 Fed. Appx. 498, a successful Youngblood challenge
3  showed the requirments to sucessfully prosecute such a claim
4  on appeal. Key differences in this case, from the instant one,
5  are that the destroyed evidence is known - a large construction
6  bolt - and that evidence factored heavily in the case. In the
7  instant case, the potentially exculpable evidence is not known
8  but can be guessed at only. None of the 'missing' evidence was
9  used at trial, only secondary sources were used.

10

## HECK DOES NOT BAR BRADY CLAIMS DE FACTO

12  (Heck v Humphrey (1994) 512 US 477, 129 LEd2d 383, 114 SCt
13  2364)
14  In two recent, appellate cases in the federal system, Brady
15  claims under 1983 have been allowed to stand even though the
16  criminal conviction was NOT overturned.
17  In Poventud v City and County of New York (CA2 2013) 750
18  F.3d 121, the Plaintiff was allowed to proceed in his 1983 action
19  for a Brady violation even though he remained convicted. In this
20  case, Poventud did receive an overturn for the Brady issue, but
21  then plead guilty to a lesser offence. Since the plea bargain
22  prevented the successful overturn on appeal, the Second Circuit
23  Court found that the 1983, Brady claim did NOT necessarily imply
24  the invalidity of the criminal conviction."Critically, the [High]
25  Court read Wolf to permit prisoners to bring a § 1983 claim for
26  using the wrong procedures, not for reaching the wrong results."
27  (@ 129, citing Heck, supra @ 482-483) Heck brought suit alleging
28  wrongful confinment, Plaintiff in the instant suit claims, as

- 5 -

1  did Poventud, that the process of evidence collection by the

2  investigators (including the prosecutors) denied Plaintiff's

3  Due Process rights under the 6th and 14th Amendments. "Poventud's

4  claim is one of process." @ 138. "Even Heck acknowledges that

5  many unreasonable searches could lead to § 1983 actions that

6  exist independant of the termination of the criminal proceedings."

7  @ 132, citing Heck @ 487 n. 7.

8      Here in the Ninth Circuit, Jackson v Barnes (CA9 2013) 749

9  F.3d 755, found that the Brady claim raised on 1983 did not conflict

10 with the criminal conviction that remained in place. Here, there

11 was no overturn for the Brady only that the plea bargain prevented

12 an appeal.

13     Similar to Jackson, supra, this instant case cannot be brought

14 on habeas, because the criminal proceedings have been exhausted

15 and, even if a Brady or Youngblood claim raised, the evidence

16 would have had no difference on the outcome. The courts all ruled

17 that if error occured, the error was harmless. Just as in the

18 plea bargain, blocking the conflict between civil and habeas,

19 the finding of harmless error blocks the conflict between the

20 criminal conviction, the appeallate ruling, and any finding by

21 the court on civil rights.

22

23     **THE HECK BAR APPLIES ONLY TO CONFLICT BETWEEN HABEAS AND**

24                      **CIVIL RIGHTS DECISIONS**

25     (Heck, supra) "... where a prisoner in such an action [§ 1983]

26 challenges the legality of his conviction - so that if he were

27 to win his case the state would be obligated to release him even

28                              - 6 -

if he has not sought such relief - the action is classified as one for habeas corpus and as such is subject to the exhaustion of state remedies." (@477, internal citation omitted) Clearly, the High Court wanted to define habeas corpus for criminal relief, relief from conviction or length of sentence, and § 1983 for relief from other constitutionally defined rights violation(s). In Wolf v McDonnell (1974) 418 US 539, 41 LEd2d 935, 94 SCt 2963, the High Court found that, "[1983 claim raised] did not call into question the lawfulness of plaintiff's continuing confinement." Instead, Wolf challenged the process the prison system used in the determination of the good-time credits. Since the damages were for a Due Process, civil rights, violation, not wrongful custody, not the credits themselves, the case was allowed to proceed forward.

In the instant case, the Plaintiff does not argue that he is held illegally; Plaintiff has no ability to challenge his criminal conviction, nor length of sentence, based on evidentiary issues. Had a Brady violation occured, Plaintiff would have raised it on federal habeas. Had a Youngblood violation occured, Plaintiff would have raised it on federal habeas. Even if an error could be shown, courts state and federal have already ruled such error harmless, i.e. there is no challenge to the conviction nor length of sentence.

////

- 7 -

## ABSOLUTE IMMUNITY OF PROSECUTORS AND INVESTIGATORS DOES

## NOT APPLY TO THE INSTANT CASE

Absolute immunity of prosecutors to Brady claims began with the High Court decision Imbler v Pachtman (1974) 424 US 409, 96 SCt 984. However, this is not a Brady claim, as there is no evidence to be argued, no evidence suppressed that the prosecutors had and chose not to reveal. In addition, the High Court has allowed a Brady claim to stant under § 1983 against a prosecutor when the Brady claim originated from either investigatory or police consultations on legal matters. (Van de Kamp v Goldstein (2009) 555 US 335, 172 LEd 706, 129 SCt 855, overturned as Brady was supervisory and part of his prosecutorial duties.) Similar findings have been made in Broam v Bogan (CA9 2003) 320 F.3d 1023 and Ceballos v Garcetti (CA9 2003) 361 F.3d 1168 in the Ninth Circuit.

In Connick v Thompson (2010) 563 US ___, 131 SCt ___, the High Court found that a prosecutor can be held for failure to train supervised prosecutors in **Brady** disclosures, but only if a 'pattern' of errors is shown, not a single incident. In the Ninth Circuit, prosecutors have been found to **NOT** have absloute immunity in Brady and Giglio violations during the investigation phases of the case. (Gantt v City of Los Angeles (CA9 2013) 717 F.3d 702; Ceballos, supra) "Suppression of evidence violates Due Process when evidence is material to guilt or punishment, irrespective of good or bad faith..."(Tennison v County of SF (CA9 2008) 570 F.3d 1078, @ 1088, citing Brady, supra)

////

1  Tennison, supra, is very critical to the instant case analysis.

2  Tennison is a § 1983 civil rights suit for the suppression of

3  evidence in a criminal trial. In this case, the Ninth Circuit

4  held that no showing of bad faith be made, only deliberate in-

5  difference, for the destruction of evidence that is material

6  to 'guilt or punishment.' (@ 1088) This is distinguished from

7  the Youngblood standard under habeas corpus, where 'bad faith'

8  is a component of the case; under § 1983, Due Process is still

9  violated without 'bad faith'. (see Gant v Roe (CA9 2004) 389

10  F.3d 903, as cited in Tennison, supra)

11  In the instant case, no 'absolute' immunity can be used to

12  hide the civil rights violation. Plaintiff was under arrest,

13  but the preliminary trial nor the felony arraignment were held

14  until 2003, nearly a year after the evidence was destroyed by

15  the Danish Police (in May 2002). Defendants DORT and PFINGST

16  were still in the 'investigatory' phase, and were not yet in

17  the 'trial' phase of this case. As such, they had no immunity

18  yet. Advice to the police during the pretrial investigation is

19  not 'absolute'-ly immune to civil action. (Burns v Reed (1990)

20  500 US 479, 114 LEd2d 547, 111 SCt 1934) A prosecutor cannot

21  "immunize himself by perfecting investigatory wrongdoings" by

22  later prosecuting the case. (Fields v Wharrie (CA7 2014) 740

23  F.3d 1107)

24  Even if the Defendants DORT and PFINGST are immune, then

25  Defendants GUERRA and DOES 1-5 are not. There has never been

26  a case that holds investigators have absolute immunity to Brady

27  or Youngblood violations. (Tennison, supra; Boudette v Singer

- 9 -

28

1  (CA9 1993) 1993 US App LEXIS 24464; Broam, supra; Buckly v Fitzsimmons
2  (1993) 509 US 259, 113 SCt 2606; others as well) Further, the
3  civil rights violation, not preserving the evidence for further
4  forensic analysis, constitutes a Due Process violation even without
5  'bad faith' from the Defendants. This violation occured years
6  before trial, before the preliminary trial, and before felony
7  arraignment. There is no immunity of liability for GUERRA nor
8  DOES 1-5.

9

10                        SUMMARY AND CONCLUSION

11  For the above cited reasons, this case is distinguishable from
12  Heck. Whereas Heck argued that his incarceration was the damages
13  accrued from the civil rights violation, the Plaintiff in the
14  instant case argues that the Due Process violation is free-standing
15  and the damages exist solely from the potential for further civil
16  rights violations while Plaintiff is incarcerated or living in
17  California. **Further**, Heck argued that the denial of evidence
18  was the cause for action, whereas Plaintiff argues that the process
19  of not preserving the evidence, allowing the Danish Police to
20  destroy it, is the cause for action. Plaintiff is insulated in
21  the instant action from conflict with his criminal conviction
22  as the courts have already ruled that even if a Due Process
23  violation existed, it was harmless beyond a reasonable doubt.

24      Prosecutors do not have absolute immunity for non-prosecutorial
25  functions, such as investigations and advice to police during
26  investigations. Even if they did, investigators have never had
27  absolute immunity to procedural liability.

                              - 10 -
28

1   Under a § 1983 civil rights action, all the Plaintiff must

2   show is that evidence material to the 'guilt or punishment' was

3   destroyed, and that such destruction came from (or was allowed

4   in the instant case) because of deliberate indifference. (Jackson

5   supra) That the evidence was destroyed is documented in the trial

6   transcripts (Exhibit A). Deliberate indifference can be inferred

7   from the cavalier attitude regarding Plaintiff (nee Defendant's)

8   civil rights at trial, and GUERRA's several 'misstatements' during

9   trial.

10   Plaintiff has made a prima facie showing that, should the

11   facts alleged be proven, he would prevail, by a preponderance

12   of the evidence.

13

14   I declare under the penalty of perjury under the laws of the United

15   States that the foregoing is both true and correct.

16

17                               Respectfully Submitted,

18

19   Soon 11/34/2015                    — S —
         date                            Plaintiff

20

21

22

23

24

25

26

27

28                              - 11 -

# CERTIFICATE OF SERVICE

Case Name:   __Whitmore__   v. __Dort, et al.__

9th Cir. Case No.:   __16-55264__

IMPORTANT:  You must send a copy of ALL documents filed with the Court and any attachments to counsel for ALL parties in this case.  You must attach a copy of the certificate of service to each of the copies and the original you file with the Court.  Please fill in the title of the document you are filing. Please list the names and addresses of the parties who were sent a copy of your document and the dates on which they were served.  Be sure to sign the statement below.

I certify that a copy of the __Appellant's Opening Brief, Exhibits__
(title of document you are filing)
and any attachments was served, either in person or by mail, on the persons listed below.

Signature
Notary NOT required

| Name | Address | Date Served |
|------|---------|-------------|

NOTE: No order to serve Defendant's has been made, so there is no 'counsel for the Defendants' to be served.